UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JACK T. POLLICINO,

                              Plaintiff,

              v.                                            5:17-CV-824 (LEK/ATB)

ALLSTATE INDEMNITY COMPANY,
*et al.*,

                              Defendants.

---

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

In this diversity action, plaintiff Jack T. Pollicino asserts that defendants Allstate

Indemnity Company, Allstate Vehicle and Property Insurance Company, and Allstate Insurance

Company (collectively "Allstate" or "Defendants") wrongfully denied his insurance claim after a

fire left his home a total loss. Dkt. No. 18 ("Amended Complaint"). Defendants disclaimed

coverage because Plaintiff allegedly violated two policy provisions that required him to reside at

the property and provide notice of any changes in occupancy.

Plaintiff asserts three causes of action: breach of contract, waiver and estoppel, and

declaratory judgment. Am. Compl. ¶¶ 38–57. After proceeding through discovery, both parties

moved for summary judgment. Dkt. Nos. 32 ("Plaintiff's Summary Judgment Motion" or

"Plaintiff's SJ Motion"); 32-19 ("Plaintiff's SJ Memorandum"); 32-18 ("Plaintiff's Statement of

Material Facts" or "Plaintiff's SMF"); 41-1 ("Plaintiff's Response to Defendants' SMF" and

"Plaintiff's Response to Defendants' Additional SMF"); 35 ("Defendants' SJ Motion"); 35-24

("Defendants' SJ Memorandum"); 35-23 ("Defendants' SMF"); and 38-1 ("Defendants'

Response to Plaintiff's SMF" and "Defendants' Additional SMF"). Defendants opposed

Plaintiff's Summary Judgement Motion, Dkt. No. 38 ("Defendants' Opposition"), and Plaintiff filed a single brief both replying to Defendant's Opposition and opposing Defendants' Motion for Summary Judgment, Dkt. No. 41 ("Plaintiff's Reply and Opposition"). Defendants filed a reply to Plaintiff's Opposition. Dkt. No. 42 ("Defendants' Reply").

For the reasons that follow, both summary judgment motions are granted in part and denied in part.

## II.    BACKGROUND

### A.  Factual Background

#### 1. *The Home*

In 2010, Plaintiff purchased a home on Chestnut Street in North Syracuse, New York (the "Chestnut property") and insured it through Allstate. Pl.'s SMF ¶¶ 2–3; Defs.' SMF ¶ 1. On April 24, 2017, a fire rendered the Chestnut property a total loss. Pl.'s SMF ¶ 8; Defs.' Resp. to Pl.'s SMF ¶ 8. Two related events preceded the fire and are at the heart of this dispute. First, Plaintiff allowed family members to—depending on whom you ask—stay temporarily, or move indefinitely, into his home. Second, Plaintiff himself began to—again, depending on whom you ask—stay temporarily, or live indefinitely, at his girlfriend's house.

One year before the fire, in April 2016, Plaintiff made an arrangement with his ex-wife, Nancy Marshall, who had recently suffered a stroke and relied on the care of their daughter, Lauren Pollicino. The arrangement allowed Ms. Marshall, Ms. Pollicino, and Ms. Pollicino's three children to "stay[] at the house on a temporary basis," Pl.'s SMF ¶ 9, or "live[] there indefinitely," Defs.' Resp. to Pl.'s SMF ¶ 9. Both parties agree, however, that Plaintiff gave up his bedroom at this point. Defs.' SMF ¶ 6; Pl.'s Resp. to Defs.' SMF ¶ 6. They also agree that Ms. Marshall, Ms. Pollicino, and Ms. Pollicino's three children brought all of their belongings with them to the home and had no other residence. Defs.' SMF ¶ 17; Pl.'s Resp. to Defs.' SMF ¶

17. But the parties do not agree whether Ms. Marshall and Ms. Pollicino paid rent. Defendants assert that Ms. Pollicino paid "at least $250 from each biweekly paycheck" "for the right to live at" the home. Defs.'s SMF ¶ 7. Plaintiff argues these payments were not rent, stating that "[n]either plaintiff's ex-wife nor his daughter paid for the right to live at [the Chestnut property]." Pl.'s Resp. to Defs.' SMF ¶ 7.

Plaintiff also has health problems, and had surgery for "serious spinal issues" in 2014, 2015, and 2017. Pl.'s SMF ¶ 7; Defs.' Resp. to Pl.'s SMF ¶ 7. Plaintiff stayed with his girlfriend, Susanne Pelrose, so she could care for him before and after his 2014 and 2015 surgeries, and then returned to the Chestnut property after he recovered. Pl.'s SMF ¶¶ 15–16, 18; Defs.' Resp. to Pl.'s SMF ¶¶ 15–16, 18. Ms. Pelrose lives on Douglas Avenue in Liverpool, New York (the "Douglas property"), Pl.'s SMF ¶¶ 13–14; Defs.' Resp. to Pl.'s SMF ¶¶ 13–14, which is about three and a half miles from the Chestnut property. Pl.'s Mem. at 3.

There is a dispute as to whether Plaintiff had surgery scheduled in 2016. Defendants assert that it was never scheduled, Defs.' SMF ¶ 21, while Plaintiff states that "his surgery was supposed to be to occur [sic] in the fall but it was not scheduled," Pl.'s Resp. to Defs.' SMJ ¶ 21. This disagreement matters because while both parties agree that Plaintiff began spending more nights at the Douglas property in fall of 2016, Plaintiff suggests this was merely in anticipation of another surgery, while Defendants insist it was because five other people had moved into the Chestnut property and Plaintiff had given up his room. Pl.'s SMF ¶ 19; Defs.' Resp. to Pl.'s SMF ¶¶ 18–19.

Plaintiff claims that between July 2016 and February 2017—when Plaintiff eventually had his third surgery and was subsequently bedridden at the Douglas property—Plaintiff was "at his [Chestnut] home 5-7 days a week." Pl.'s SMF ¶ 21. Plaintiff states that he helped take care of

his grandchildren, paid all taxes and bills associated with the home, and kept all of his clothing at the Chestnut property. Pl.'s SMF ¶¶ 22–24. Defendants dispute this, characterizing him as being "physically present only intermittently." Defs.' Resp. to Pl.'s SMF ¶ 21. Defendants assert that Plaintiff "spent most of his nights at 111 Douglas Avenue, ate most of his meals there, showered there, dressed there, did laundry there, and when he could work, he did so from 111 Douglas Avenue." Defs.' SMF ¶ 15. Defendants also state that Ms. Pollicino paid the cable bill at the Chestnut property and that, while Plaintiff kept some clothes at the Chestnut property, he moved his motorcycle, a bed, other clothes, and toiletries to the Douglas property. Defs.' SMF ¶ 13. Plaintiff changed his mailing address to the Douglas property in 2014 and received all personal mail there. Defs.' SMF ¶ 8, 11. Plaintiff owns a company and operated it out of the Douglas property "for at least a year prior to the fire." Defs.' SMF ¶ 9.

The parties agree that "the cause of the fire was dead leaves ignited by a grill used by the father of Ms. Pollicino's children," that the grill belonged to Plaintiff, and that Plaintiff was "100% disabled/bedridden due to his surgeries." Defs.' SMF ¶¶ 25–27; Pl.'s Resp. to Defs.' SMJ ¶¶ 25–27.

## 2. The Insurance

Plaintiff's home has been insured through Allstate since 2010. Pl.'s SMF ¶ 3; Defs.' SMF ¶ 1. There is no dispute that Plaintiff's premiums were current or that the fire was a covered hazard. Pl.'s SMF ¶ 28; Defs.' Resp. to Pl.'s SMF ¶ 28. Instead, Defendants denied coverage for two reasons. First, they denied coverage because Plaintiff did not "reside" at the Chestnut property:

> The policy states that Coverage A Dwelling Protection provides insurance coverage to "your dwelling" which is defined as the single-family building structure identified in the policy declarations

where the named insured resides. Here, you are the only named insured on the policy declarations. To meet the definition of a dwelling, a property must be a residence of yours. The policy does not cover a location where the insured does not reside, nor does it provide any landlord coverage.

Therefore, because you did not reside at the Chestnut Property at the time of the loss, having moved out months before the loss, the Chestnut Property is not covered under the policy, and Allstate hereby denies and disclaims any insurance coverage to you for the loss to the building caused by the fire.

Dkt. 35-9 ("Denial Letter") at 2. Second, Defendants disclaimed coverage because Plaintiff failed to notify Defendants of a change in occupancy:

Further, the Policy's Insuring Agreement required you as the named insured to inform Allstate of any change in title, use or occupancy of the residence premises. Failing to do so constitutes a breach of the conditions of the policy, thereby voiding coverage. You failed to inform Allstate that he [sic] no longer occupied the residence premises, breaching the policy conditions and voiding coverage.

Denial Letter at 3.[1]

## III.    LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational juror could find in favor of the non-moving party. Ricci v. DeStefano, 557 U.S. 557, 586 (2009).

---

[1] The Denial Letter also included an explanation of why Plaintiff's daughter, Ms. Pollicino, was not an insured person that triggered coverage. Denial Letter at 3. Plaintiff does not dispute this.

In assessing a motion for summary judgment, a court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted). "It is well established that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'" Curry v. City of Syracuse, 316 F.3d 324, 333 (2d Cir. 2003) (citation omitted).

## IV. DISCUSSION

This dispute is about the two policy provisions cited in the Denial Letter: the requirement that Plaintiff reside in the insured dwelling (the "residency requirement") and the requirement that Plaintiff provide notice of any change in occupancy (the "notice requirement"). Plaintiff argues that in denying his claim, Defendants breached their insurance contract because both provisions are unenforceable, and that even if they are enforceable, Plaintiff did not violate them.

### A. The Residency Requirement

Defendants denied Plaintiff's claim because Plaintiff "did not reside at the Chestnut property at the time of the loss." Denial Letter at 2. The Court finds that the residency requirement is unenforceable because it irreconcilably conflicts with another provision in Plaintiff's insurance policy.

In a section titled "Definitions Used in This Policy," Plaintiff's policy states as follows:

> 6. Dwelling—means the single-family building structure, identified as insured property on the Policy Declarations, where you reside and which is principally used as a private residence.
>
> . . .
>
> 8. Insured Premises—means:
>       a) the residence premises
>
> . . .

> 14. Residence Premises—means the dwelling, other structures and land located at the address stated on the Policy Declarations.

Dkt. 35-6 ("Policy") at 10–11.[2] The Denial Letter explains that the policy provides coverage to "the dwelling," and that "to meet the definition of a dwelling, a property must be a residence of yours." Denial Letter at 2. While convoluted, Plaintiff does not appear to dispute that, standing alone, these provisions would require Plaintiff to reside at the Chestnut property to maintain coverage.

However, fifteen pages later, another policy provision stands in stark contrast:

> 9. Permission Granted To You
> a). The residence premises may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy.

Policy at 25 (the "vacancy clause"). Plaintiff argues that the vacancy clause contradicts the residency requirement. Pl.'s SJ Mem. at 13–15. The Court agrees.

"Courts must determine the rights and obligations of parties under an insurance contract based on the policy's specific language." State Farm Mut. Auto. Ins. Co. v. Glinbizzi, 780 N.Y.S.2d 434, 435–36 (2004). "Unambiguous provisions must be given their plain and ordinary meaning . . . If a provision is ambiguous, such as when it may reasonably be interpreted in two conflicting manners, it must be resolved in favor of the insured and against the insurer who drafted the contract." Id. at 436. "[T]he test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured upon reading the policy." Mostow v. State Farm Ins. Companies, 88 N.Y.2d 321, 326–27 (N.Y. 1996).

---

[2] Unless stated otherwise, page numbers refer to those generated by CM/ECF, the Court's case management system.

The Court's analysis of these two provisions is not complex. The residency requirement mandates that Plaintiff reside at the insured dwelling. The vacancy clause allows Plaintiff to leave the premises vacant or unoccupied—that is, to not reside at the insured dwelling.[3] If Plaintiff avails himself of the permission to not reside at the insured dwelling, he violates the residency requirement. Because these terms conflict, the policy is ambiguous and must be resolved in Plaintiff's favor.[4] See Mostow, 88 N.Y.2d 321 at 326–27 (affirming an insurance award of over $100,000 when the policy ambiguously provided both a $100,000 per person limit and a $300,000 limit when two or more persons were injured).

Nor is the Court's analysis original. In Gulati v. Allstate Ins. Co., 2017 NYLJ LEXIS 2524, *5–6 (Sup. Ct. Chemung Cty. Sept. 5, 2017), the New York Supreme Court found the identical residency provision unenforceable. It held that Allstate "cannot now rely on the fact that Plaintiff was not residing at the premises at the time of the fire to deny coverage, as it had granted him express permission to essentially not reside there and leave the house vacant for an unlimited duration." Id. at 7–8; see also Ionata v. Allstate Ins. Co., 15-CV-6561, 2016 WL 4538756, at *3 (E.D. Pa. Aug. 30, 2016) (finding a similar policy provision ambiguous because "it is difficult to reconcile Allstate's position that the policyholder must be living on the premises with a clause that provides the Property may be vacant or unoccupied for any length of time.").

---

[3] Though the parties argue about the differences between "residency" and "occupancy," there is no dispute that residency requires at least as much presence at the property as occupancy, see Dean v. Tower Ins. Co. of N.Y., 19 N.Y.3d 704, 709 (2012), so there would be no way for Plaintiff to reside at the Chestnut property but not occupy it (where, in contrast, it might be possible to occupy a property without residing in it).

[4] Further, if "the *residence* premises may be vacant or unoccupied for any length of time," as the vacancy clause allows, Policy at 25 (emphasis added), then leaving the property vacant or unoccupied does not change the dwelling's status as the "residence premise." This, of course, renders the definition of "resides" almost meaningless, furthering the argument that the residency requirement and vacancy clause are irreconcilable.

Defendants directly address this conflict only in passing, arguing that the vacancy clause is irrelevant because the Chestnut property was not vacant. Defs.' Reply to Pl.'s Opp. at 3. But while the property was not vacant, the vacancy clause clearly gave Plaintiff permission to not reside at the Chestnut property. And Allstate's first ground for denial focuses only on Plaintiff: "because you did not reside at the Chestnut Property at the time of the loss, having moved out months before the loss, the Chestnut Property is not covered." Denial Letter at 2. Thus, when it comes to Plaintiff's residence—the only person whose residence matters for the residency requirement—the two provisions conflict: the residency requirement mandates that Plaintiff reside at the Chestnut property; the vacancy clause grants him permission to reside elsewhere. See Ionata, 2016 WL 4538756, at *3 ("At oral argument, defense counsel dismissed this [vacancy] provision as irrelevant because the Property was in fact not vacant at the time of the loss. That misses the point. The sine qua non of Allstate's position is that the policyholder personally must be on the premises for coverage to apply, and yet the Policy specifically provides coverage even if it is vacant. Necessarily, if the Property were vacant, the insured would not be "residing" there in the sense advanced by Allstate as the foundation for its argument.").

Because the residency requirement is unenforceable due to the conflicting vacancy clause, the Court grants Plaintiff summary judgment on the issue of whether Defendants may disclaim coverage based on the residency requirement. Thus, the Court does not address Plaintiff's additional arguments that the residency requirement violates Insurance Law § 3404 and that Plaintiff still resided at the Chestnut property at the time of the fire.

### B. The Notice Requirement

Defendants also denied Plaintiff's claim because he "failed to inform Allstate that he no

longer occupied the residence premises, breaching the policy conditions" requiring him to "inform Allstate of any change in title, use or occupancy of the residence premises." Denial Letter at 3. Defendants base this on the notice requirement in Plaintiff's policy, which states:

> **Insuring Agreement**
> In reliance on the information you have given us, we agree to provide the coverages indicated on the Policy Declarations. In return, you must pay the premium when due and comply with the policy terms and conditions, and inform us of any change in title, use or occupancy of the residence premises.

Policy at 11 (emphasis in original).

Plaintiff raises several objections to the enforceability and application of the notice requirement. While the Court finds that the requirement could be enforceable in some circumstances, it also finds there is a genuine issue of material fact as to whether it is enforceable in this instance.

### 1. Enforceability of the Notice Requirement in General

Plaintiff argues that the notice requirement is facially unenforceable because it conflicts with the vacancy clause, violates the New York Standard Fire Policy, and is immaterial. The Court disagrees.

### a. Vacancy Clause

Unlike the residency requirement, the notice requirement is reconcilable with the vacancy clause. As Defendants argue, the policy should be interpreted so that Plaintiff is allowed to leave the home vacant, but must notify Defendants if he does so. Defs.' SJ Mem. at 20; Defs.' Opp. at 12.

"It is well settled that a contract must be read as a whole to give effect and meaning to every term." N.Y. State Thruway Auth. v. KTA-Tator Eng'g Servs., P.C., 913 N.Y.S.2d 438, 439 (N.Y. App. Div. 2010). "A contract should be interpreted in a way which reconciles all its

provisions, if possible." Green Harbour Homeowners' Ass'n, Inc. v. G.H. Dev. & Const., Inc., 14 A.D.3d 963, 965 (N.Y. App. Div. 2005).

This is not, as Plaintiff argues (and as was the case with the residency requirement), "a conflict between several of the policy provisions [that] creates a latent ambiguity that must be resolved in favor of the Plaintiff." Pl.'s SJ Mem. at 14–15 (quoting Hudson v. Allstate Ins. Co., 809 N.Y.S.2d 124, 125 (2006)). Here, the vacancy clause allows Plaintiff to leave the premise vacant for any period of time, and the notice requirement mandates that Plaintiff provide Defendants notice about any change in occupancy. While the provisions relate to one another, they do not conflict. See Swanson v. Allstate Indem. Co., No. 09-CV-2148, 2011 WL 13175838, at *11 (N.D. Ala. Aug. 4, 2011), aff'd, 463 F. App'x 838 (11th Cir. 2012) (finding with respect to a similar policy that the fact that "the Policy states that '[t]he residence premises may be vacant . . . ' says nothing about [the insured's] duty to notify Allstate of such vacancy as is required by the Insuring Agreement.").

It is unfortunate that this policy required Plaintiff to realize that exercising the privilege granted by the vacancy clause would void his coverage unless he read the vacancy clause in conjunction with the notice requirement located fourteen pages earlier. See Policy at 11, 25. But a contract "should be interpreted in a way which reconciles all its provisions," and here, there is a way to do so. Green Harbour, 14 A.D.3d at 965.

### b. § 3404 and the New York Standard Fire Policy

Plaintiff argues in passing that the notice requirement violates New York Insurance Law § 3404 because § 3404 "does not allow this provision as it reduces coverage" and "§ 3404 expressly bars insurance compan[ies] from creating additional hurdles to cover[age] for fire losses beyond those provided in the Standard Fire Policy." Pl.'s SJ Mem. at 20.

Insurance law § 3404 requires a policy to have "terms and provisions no less favorable to the insured than those contained in the standard fire policy." N.Y. Ins. Law § 3404. Defendants argue that under § 3404, insurers are permitted to exclude coverage when the insured conceals or misrepresents material information. Defs.' SJ Mem. at 19–20. Indeed, the Standard Fire Policy, as quoted by Plaintiff, states that "[t]his entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance . . . ." Pl.'s SJ Mem. at 8–9 (quoting N.Y. Ins. Law § 3404). Thus, as long as the misrepresentation is material, § 3404 permits Defendants to disclaim coverage.

### c. Materiality

The Court agrees with Defendants that failure to provide notice of a change in occupancy can be a material misrepresentation. But in this case, there is a factual dispute about whether Plaintiff made such a material misrepresentation.

A misrepresentation is a false "statement as to past or present fact, made to the insurer by . . . the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof." N.Y. Ins. Law § 3105(a). "A misrepresentation is 'material' if 'knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract.'" Principal Life Ins. Co. v. Locker Grp., 869 F. Supp. 2d 359, 363 (E.D.N.Y. 2012) (quoting N.Y. Ins. Law § 3105(b)(1)). "Even innocent misrepresentations, if material, are sufficient to warrant rescission of a life insurance policy." Id. Materiality is typically a jury question. Kiss Const. NY, Inc. v. Rutgers Cas. Ins. Co., 877 N.Y.S.2d 253, 255 (2009). "However, where the evidence concerning materiality is substantially uncontradicted, the matter is one of law for the court to determine." Principal Life Ins. Co., 869 F. Supp. 2d at 363–64.

Defendants claim that the failure to provide notice was material because, had they been notified, Defendants "would not have issued the homeowner's insurance policy, which cannot be used if the insured property is not the insured's primary residence." Defs.' SJ Mem. at 18–19; see also Defs.' Reply to Pl.'s Opp. at 5. Anthony Falso, Plaintiff's insurance agent, testified that Plaintiff's policy required that the insured's property be a "primary residence," Falso Dep. at 30–31, 34, and stated that "[i]f someone says, '[w]e have a tenant in there,' we have to look at the landlord policy." Id. at 63. Based on this undisputed testimony and the policy provision that explicitly states "we agree to provide the coverages indicated on the Policy Declarations. In return, you must . . . inform us of any change in title, use or occupancy," Policy at 11, the Court finds that the notice requirement is material.

Other courts agree. D'Agostino v. Allstate Ins. Co., 2015 WL 5797022 (N.Y. Sup. Ct. 2015), addressed a policy with an identical notice requirement that covered insureds who did not reside at the covered premises. The court held that "the plaintiffs had the obligation to provide accurate information as to who resided at the insured premises . . . not residing at the insured premises is a material fact that the insurer must be told because it triggers the issuance of a different type of policy." Id. at *4. The court considered the notice requirement itself as part of this rationale, noting that "[e]ven without the existence of all of the above case law, under the terms of the insurance contract, the burden to provide accurate information falls on the insured." Id. The fact that Defendants may have suggested an alternative policy, as opposed to no policy at all, does not change the analysis. "The test to be applied does not require the insurer to show it would not have issued any policy at all to the insured; it only has to show it would not have

issued the policy in question" Id. at *4 (citing Kantrowitz v Paul Revere Life Ins. Co., No. 95-CV-2204, 1997 WL 128463, at *4 (S.D.N.Y. Mar. 19, 1997)).[5]

A New York court also upheld Allstate's denial of a claim based on a violation of a notice requirement in Sun v. Allstate Indem. Co., 55 Misc. 3d 805 (N.Y. Sup. Ct. 2017). While the Sun court did not discuss materiality, it found that "[t]he policy clearly indicates that plaintiffs needed to inform Allstate of any change in title, use or occupancy of the property and plaintiffs failed to do this." Id. at 809; see also Swanson, 2011 WL 13175838, at *11 ("Just as the Insuring Agreement unambiguously requires Swanson to 'pay the premium when due' as a condition precedent to liability under the Policy, the Insuring Agreement unambiguously required Swanson to inform Allstate 'of any change in title, use or occupancy' of the Property as a condition precedent to liability under the Policy.").

Thus, the failure of an insured to provide notice of a change in occupancy, as required by an insurance contract, can constitute a material misrepresentation.

### 2. Enforceability of the Notice Requirement in this Instance

Having determined that misrepresenting occupancy is material under Plaintiff's contract, the next question is whether Plaintiff actually misrepresented occupancy. Here, the Court finds there is a factual dispute as to whether Plaintiff made such a misrepresentation.

### a. Defendants' Argument: The 2016 Policy Renewal

Defendants assert that Plaintiff materially misrepresented the Chestnut property's

---

[5] Nor does the fact that Defendants continue to insure the property undermine the notice requirement's materiality. See Pl.'s Reply and Opp. at 11; Defs.' Reply at 7. As Defendants note, Plaintiff has cited no caselaw to support this argument, and in any event, Defendants are now aware of the fact that the property is vacant, meaning there is not an ongoing violation of the notice requirement. Defs.' Reply at 7.

occupants when he renewed his policy in 2016. They argue:

> It is undisputed that, before the fire, the plaintiff never personally informed Allstate of the fact that Ms. Marshall, Ms. Pollicino, and the children were living at the Property. This omission became a misrepresentation when the plaintiff underwent a policy renewal in November 2016, and elected not to notify Allstate that the list of individuals living at the address was more than just him.

Defs.' SJ Mem. at 18–19. To establish that this misrepresentation occured, Defendants reference to Plaintiff's 2016 renewal form, which clearly lists Plaintiff as the only occupant. Dkt. No. 35-8 ("2016 Policy Renewal") at 1. The form has a section titled "adult occupants" under which Plaintiff is the only individual listed, and the section immediately below that states "children in household: none." Id. Plaintiff claims, however, that "any information in the renewal was automatically filled in by the computer and Mr. Pollicino never reviewed or signed any renewal documents." Pl.'s Resp. to Defs.' SMF ¶ 20. This is at least partially consistent with the testimony of Heather Hibbert, an employee of Plaintiff's Allstate agent Anthony Falso, who stated that the fields on the policy renewal were pre-filled "because [she] was doing a rewrite. It translates everything automatically." Id. at 10. Additionally, the policy renewal form is signed by Mr. Falso and Ms. Hibbert, but the "applicant's signature" line is blank. 2016 Policy Renewal at 6. Ms. Hibbert explained that a signature was not required when there were no changes made to the policy, as was the case with the 2016 renewal. Hibbert Dep. at 12.

Defendants also argue that the Court "should credit the testimony of Allstate agent Anthony Falso and his employee Heather Hibbert that the plaintiff was asked who lived at the property in November 2016, and indicated that he was the only occupant." Defs.' Opp. to Pl.'s SJ at 10; see also Defs.' SMF ¶¶ 19–20; Defs.' Additional SMF ¶¶ 20–22. But while Defendants characterize Ms. Hibbert's and Mr. Falso's testimony as definitive, the underlying transcripts are murkier. Ms. Hibbert did *not* testify that she asked Plaintiff about the Chestnut property's

occupants. She states that she called Plaintiff, discussed reducing his rate, and informed him that he would need a home inspection. Dkt. No. 35-16 ("Hibbert Deposition") at 7–8. Ms. Hibbert called Plaintiff again after the inspection and discussed the inspection and the rate change. Id. at 11. In response to the question "[d]id you discuss anything else?" Ms. Hibbert testified, "I would have reviewed—no, basically if they want to change anything from the original policy they have to e-mail me a request to make a change." Id.

Unlike Ms. Hibbert's testimony, Mr. Falso's testimony aligns with Defendants claims:

> Q: So in this policy application, Mr. Pollicino would have been asked who the adult occupants of 602 Chestnut Street were; correct?
> A: Yes.
> Q: And this would have been in November 2016 he would have been asked this?
> A: Yes.

Falso Dep. at 82–83. But there is an obvious problem here. Mr. Falso is testifying about what Ms. Hibbert *would* have asked Plaintiff, not what she did ask. Mr. Falso stated that it was Ms. Hibbert, not he, who worked with Plaintiff on the renewal. Id. at 25–26. And Mr. Falso had no particular knowledge about this renewal—he did not even know if Ms. Hibbert met personally with Plaintiff or spoke to him over the phone. Id. at 26.

Further, Plaintiff disputes that he was asked about occupancy. Pl.'s Reply and Opp. at 10; see also Pl.'s Resp. to Defs.' SMF ¶ 19–20; Pl.'s Resp. to Defs.' Counter-SMF ¶¶ 20–22. Plaintiff testified that he "[d]efinitely didn't talk to anybody [from Allstate] in November of 2016." Dkt. No. 12 ("Jack Pollicino Deposition") at 34. In response to a follow up question, however, he also stated, "I've made calls many times through the years. I don't recall the dates." Id. at 34–35.

There may be room to argue that Plaintiff should have spoken up when Ms. Hibbert allegedly asked Plaintiff if he wanted to make any changes to the policy. And it is unclear if

anything should be made of the lack of Plaintiff's signature. But critical to Defendants' Summary Judgment Motion is their claim that Plaintiff was asked directly about occupancy during his 2016 renewal. The only support for that fact comes from Mr. Falso, who was admittedly not part of the renewal conversation. And the testimony of another employee who *was* part of the renewal conversation does not support Defendants' claim.

Thus, this is an issue of disputed material fact. This is unlike D'Agostino, 2015 WL 5797022 or Sun, 55 Misc. 3d 805, in which there was no factual dispute about whether the insured had made a misrepresentation in the first place. Here, the outstanding question is not whether the potential misrepresentation was material, but rather whether that misrepresentation occurred at all. While the Court has determined that misrepresenting the list of occupants while renewing the policy *would* be material, it is for a jury to determine whether Plaintiff actually made such a misrepresentation.[6, 7]

---

[6] Defendants do not argue that Plaintiff's failure to notify Defendants of the change in occupancy on his own (e.g., by calling or writing) was a material misrepresentation. Rather, Defendants confine their justifications for disclaimer to Plaintiff's failure to provide accurate information during the policy renewal. Defs.' SJ Mem. at 18–19 (". . . [t]his omission became a misrepresentation when the plaintiff underwent a policy renewal"). Defendants' position on whether they can disclaim coverage for a failure to comply with the notice provision in a situation in which the policy was not renewed is unclear. But as Defendants limit their argument to Plaintiff's alleged misrepresentation at the time of renewal, the Court limits its analysis accordingly.

[7] Plaintiff's argument that Defendants did not adequately plead misrepresentation, Pl.'s Reply and Opp. at 11, is unavailing. As Defendants note, "the misrepresentation here violated the provision requiring Plaintiff to notify Allstate of any changes in occupancy, and *that* clause was certainly pleaded, as it has been a basis for Allstate's denial of coverage since the inception of this dispute." Defs.' Reply at 5 (emphasis in original). Plaintiff has put forth no argument why the Court should require Defendants to have originally pleaded the misrepresentation underlying their disclaimer based on the notice requirement.

### b. Plaintiff's Arguments that he Complied with the Notice Requirement

Plaintiff makes several attempts to establish that he is entitled to summary judgment because he complied with the notice requirement. While none are persuasive, the arguments do potentially raise additional issues of disputed fact.

### *1. Notice*

Plaintiff argues that Defendants had notice of the change in occupancy because, prior to the fire, Ms. Marshall took out a renter's insurance policy for the Chestnut property through Allstate. Pl.'s SJ Mem. at 20; Pl.'s SMF ¶ 31. Defendants counter that the renter's insurance policy was in a different portfolio, and "there would have been no way to cross-reference the addresses between them. Only someone with the address memorized would have noticed they were for the same property." Defs.' Resp. to Pl.'s SMF ¶ 24. Mr. Falso's testimony backs this assertion. Falso Dep. at 85–86 ("They're two separate portfolios . . . unless you have this address memorized in the back of your head, you wouldn't know the two connected.").

Plaintiff also notes that he listed the Douglas property as his mailing address on insurance forms, see 2016 Renewal at 1, and claims that he had conversations with Defendants' agents in which he mentioned that he used the Douglas property for his mailing and business addresses. Pl.'s Resp. to Defs.' SMF ¶ 18. Mr. Falso testified that having a different mailing address was not unusual and did not alert him that Plaintiff was living elsewhere because insureds "can have a different mailing address for numerous reasons, of course." Falso Dep. at 50.

The Court finds that Defendants did not have notice of the change in occupancy based on the renter's insurance or the change in mailing address. In D'Agostino, 2015 WL 5797022, the court held that the fact that "defendants by doing a title search could have determined that neither insured resided at the premises" did not relieve the insureds of the requirement to provide notice.

Id. at *3. The court explained that "insurance policies are issued based on the information provided by the insured and the insured has a duty to provide accurate information . . . The fact that by the exercise of diligence by the carrier might have discovered the falsity of the representation does not relieve the person making the statement from the consequences of his act." Id.; c.f. Sun, 55 Misc. 3d at 809 ("[P]laintiffs' passing comment with an Allstate agent in May of 2011 that they were thinking about selling or renting out the property is not sufficient to put Allstate on notice.").

To the extent that the mailing address and renter's insurance suggest that Plaintiff did not intentionally mislead Defendants about occupancy, they are no defense. See Vella v. Equitable Life Assur. Soc. of U.S., 887 F.2d 388, 391 (2d Cir. 1989) (citing Process Plants Corp. v. Beneficial Nat'l Life Ins. Co., 385 N.Y.S.2d 308, 310 (1976), aff'd sub nom. Process Plants Corp. v. Beneficial Nat'l Life Ins. Co., 366 N.E.2d 1361 (1977) ("So long as a misrepresentation is material, it is no defense to an action for rescission that the misrepresentation was innocently made.").[8]

### 2. Change in Occupancy

Next, Plaintiff asserts that because there were several people living in the Chestnut property at the time of loss, it was "indisputably occupied." Therefore, Plaintiff argues, he was not required to provide notice because the property never changed from occupied to unoccupied. Pl.'s SJ Mem. at 19. Defendants counter that a change in the list of occupants constitutes "*any change in . . . occupancy*" as contemplated by the notice requirement, Defs.' SJ Mem. at 20–21

---

[8] The fact that Plaintiff was not actively disguising the living situation with respect to his mailing address and Ms. Marshall's renter's insurance (to the extent he had any influence over that) may, however, lend some support to Plaintiff's earlier contention that he did not disguise his living situation during the 2016 policy renewal process.

(quoting Policy at 11) (emphasis in Defs.' SJ Mem.), meaning that Plaintiff was required to give notice that he moved out and others moved in. see Defs.' Mem. at 18, 21.

The Court agrees with Defendants a change in the list of occupants constitutes "any change in occupancy." It is true that ambiguous policy provisions should be construed in favor of the insured and that "for the insurer to prevail, it must demonstrate not only that its interpretation is reasonable but that it is the only fair interpretation." City of N.Y. v. Evanston Ins. Co., 39 A.D.3d 153, 156 (2007); Pl.'s SJ Mem. at 20. But there is only ambiguity if the competing interpretations are reasonable, and Plaintiff is unable to muster any legal or common-sense support for his creative, exceedingly narrow reading of "change in occupancy." The Court cannot reasonably conclude that a provision requiring notice of "any change in title, use or occupancy of the residence premises" does not require notice when the only person listed on the insurance application moves out and five people not listed anywhere on the policy move in. See Policy at 5.

### 3. Plaintiff's Continued Occupancy (and Does it Matter?)

Finally, Plaintiff argues that there was not any change in occupancy (and thus no requirement to provide notice) because Plaintiff occupied the Chestnut property up until the fire. The Court finds that whether Plaintiff continued to occupy the Chestnut property is an issue of disputed fact. But as discussed, the policy also requires notice if other people become occupants, and there no factual dispute that Ms. Marshall, Ms. Pollicino, and Ms. Pollicino's children became occupants. Thus, if Defendants disclaimed coverage because Plaintiff failed to provide notice that other people became occupants, it does not matter whether Plaintiff himself remained an occupant. However, there is an outstanding question as to whether Defendants disclaimed coverage on the ground that other people because occupants or based the disclaimer solely on

Plaintiff ceasing to be an occupant.

Courts have interpreted occupancy broadly for the purposes of insurance contracts. In Page v. Nationwide Mut. Fire Ins. Co. 15 A.D.2d 306, 307 (N.Y. App. Div. 1962), for instance, a court found that, although the property had been indisputably unoccupied for most of the 60-day window in question, the fact that the insureds slept at the property for three nights, had some meals there, and kept some work clothes there was sufficient to create the possibility of occupancy, despite the fact that "[t]here was no furniture in the house . . . [the insureds] slept on the seats of their automobile placed in the house . . . [and on most nights slept] in a motel some distance away." Id. at 307; see also Perrotta v. Middlesex Mut. Ins. Co. 325 N.Y.S.2d 251 (N.Y. App. Div. 1971) ("[T]he failure to sleep in the premises is not fatal to a plaintiff who had been in the premises for the eight days preceding the loss.").

The parties dispute the extent and characterization of Plaintiff's presence at the Chestnut property. Defendants state that Ms. Pollicino told the investigator that Plaintiff "no longer lived there and had moved out in April 2016," Defs.' SMF ¶ 23; Defs.' Additional SMF ¶ 25, and that "plaintiff admitted to the adjuster that he had been living in Liverpool, and not at the [Chestnut property]," Defs.' SMF ¶ 24. Timothy Brown, a senior claim service analyst for Allstate who investigated Plaintiff's claim, testified as follows:

> Q: Okay. How did you -- how did you come to
> the determination that the insured was not residing at
> the home?
> A: His daughter told me.
> Q: What did she say to you?
> A: She said he moved out early April 2016.
>
> . . .
>
> Q: . . . Can you tell me what information that Allstate
> considered in making the determination to disclaim
> coverage?

> A: Sure. At the time I inspected the
> property, his daughter had told me that he had moved to
> Liverpool with his girlfriend and was not living at the
> house at the time the fire occurred . . . Once I had the
> conference call with the insured . . . , he
> indicated that he was -- had been living in Liverpool.

Brown Dep. at 16, 25. Plaintiff disputes this: "Defendants have failed or refuse to produce any statements of [P]laintiff and [he] has not offered any admissions. The testimony cited is not accurate. Mr. Pollicino told Allstate 'I didn't move out. I was just staying over on a temporary basis somewhere else.'" Pl.'s Resp. to Defs.' SMF ¶ 24 (quoting Brown Depo. at 23). Plaintiff also disputes the accuracy of Ms. Pollicino's alleged statement, though he does not specify what he believes she said. Pl.'s Resp. to Defs. SMF ¶ 23; Pl.'s Resp. to Defs.' Additional SMF ¶ 25. Mr. Brown did not recall if anyone else was present during this interview, and he did not take notes. Brown Dep. at 26–27.

Plaintiff argues that "to the extent he was spending nights at his girlfriend's home, [he] was only doing so on a temporary basis." Pl.'s SMF ¶ 42. Defendants counter that Plaintiff had been spending *all* of his nights at the Douglas property: "Ms. Pollicino testified that plaintiff stopped spending any nights at the [Chestnut] property in July 2016." Defs.' Resp. to Pl.'s SMF ¶ 42. (Citing Dkt. No. 32-8 ("Lauren Pollicino Deposition") at 9); Notably, this contradicts Ms. Marshall's affidavit:

> From the time I moved in until the fire on April 24, 2017 [Plaintiff]
> was at his house at [the Chestnut property] almost every day. He
> often stayed overnight. [Plaintiff] has a major back and neck
> problem. During periods when his back problems were severe he
> would stay at his girlfriend's house at night. However, unless there
> was a dire medical situation, [Plaintiff] was at [the Chestnut
> property] almost every day. I would estimate he was there 5-7 days
> a week.

Dkt. No. 32-6 ("Marshall Affidavit") at 2.[9]

Based on this contradictory testimony and broad definition of occupancy, there is a disputed issue of fact as to whether Plaintiff occupied the Chestnut property in the months leading up to the fire. There is no question, however, that Plaintiff's family occupied the Chestnut property. As stated above, if Defendants denied coverage because Plaintiff did not provide notice that other people moved in, the question of whether Plaintiff still occupied the Chestnut residence would be irrelevant, and the only remaining question would be whether Plaintiff materially misrepresented the change in occupancy.

But the denial letter does not disclaim coverage because Plaintiff failed to provide notice that other people moved in. The denial letter states:

> [T]he Policy's Insuring Agreement required you as the named insured to inform Allstate of any change in title, use or occupancy . . . You failed to inform Allstate that he [sic] no longer occupied the residence premises, breaching the policy conditions and voiding coverage.

Denial Letter at 3. Mismatched pronouns aside, it is clear that in disclaiming coverage under the notice requirement, Defendants rely only on Plaintiff's failure to provide notice that he no longer occupied the premises.

Neither party has explicitly addressed this issue, but it appears that Defendants have attempted to broaden their justifications for disclaimer since the time of the Denial Letter. In their Summary Judgement Memorandum, for instance, Defendants claim that the fact that Plaintiff did not inform Allstate that others were living at the Chestnut property during his 2016 policy renewal was a material misrepresentation. Defs.' SJ Mem. at 18.

"New York's substantive law . . . precludes asserting additional reasons for having

---

[9] This refers to the Marshall Affidavit's internal pagination.

terminated or repudiated a contract only if a party either relied on the reasons for non-performance originally given, or could have cured its performance had the true grounds for repudiation been asserted earlier." <u>Primetime 24 Joint Venture v. DirecTV, Inc.</u>, No. 99-CV-3307, 2000 WL 426396, at *9 (S.D.N.Y. Apr. 20, 2000) (citing <u>Cawley v. Weiner</u>, 236 N.Y. 357, 362 (1923); <u>Albert J. Schiff Associates, Inc. v. Flack</u>, 425 N.Y.S.2d 612, 615 (N.Y. App. Div. 1980). It is not immediately apparent to the Court that these exceptions apply. But because the Court has not heard from the parties on this issue, it makes no determination at this time. The Court will, however, consider requests for future briefing on this matter should either party find the issue relevant.

### C. Waiver and Estoppel

Plaintiff also asserts a cause of action in waiver and estoppel. Am. Compl. ¶¶ 45–50. Plaintiff claims that Defendants "did not seek and did not consider any information relating to residency in its insurance application" and "knew the facts and circumstances surrounding the Insured Premises." <u>Id.</u> ¶¶ 46–47. Plaintiff further claims he "reasonably relied on Allstate to know, record, learn, accept, and ask for all information relevant to the Insured Premises relating to insurance coverage" and "was injured by this reliance." <u>Id.</u> ¶¶ 48–49.

Waiver is a "voluntary and intentional relinquishment of a known right." <u>Albert J. Schiff Assocs., Inc. v. Flack</u>, 51 N.Y.2d 692, 698 (1980). "[C]ourts find waiver where there is direct or circumstantial proof that the insurer intended to abandon the defense." <u>Id.</u> Under the doctrine of estoppel, "an insurer, though in fact not obligated to provide coverage, may be precluded from denying coverage upon proof that the insurer by its conduct, otherwise lulled [the insured] into sleeping on its rights under the insurance contract." <u>Provencal, LLC v. Tower Ins. Co. of New</u>

York, 30 N.Y.S.3d 138, 141 (N.Y. App. Div. 2016) (internal quotations omitted). "Estoppel requires proof that the insured has suffered prejudice by virtue of the insurer's conduct." Id.

In opposition to Defendants' Summary Judgment Motion, Plaintiff argues that "[i]t is undisputed that defendants knew that plaintiff's ex-wife had moved in with their daughter and grandchildren." Pl.'s Reply and Opp. at 12. But Plaintiff cites no evidence for this assertion. Id. Plaintiff also does not cite any caselaw establishing how this alleged knowledge backs Plaintiffs claims of waiver and estoppel. Id. Nor does Plaintiff respond to any of the cases cited by Defendants to establish that Plaintiff's waiver and estoppel claims are unavailing. Id.; see Defs.' SJ Mem. at 23.

While Plaintiff does not explain his argument, the Court presumes that the basis for these claims is his previous assertion that Defendants had notice because of Ms. Marshall's renter's insurance and Plaintiff's mailing address. But the Court has already determined that there is no factual support for the claim that the renter's insurance and mailing address provided notice. Thus, no reasonable jury could find that Defendants effected a "voluntary and intentional relinquishment" of their right to disclaim coverage for lack of notice. See Sun, 55 Misc. 3d at 809 (finding waiver and estoppel inapplicable). Defendants' Motion for Summary Judgment is granted as to Plaintiff's cause of action for waiver and estoppel.[10]

### D. Declaratory Judgment

In the third cause of action in the Amended Complaint, Plaintiff "seeks a judicial declaration by the Court: (i) that coverage for the loss at the Premises referenced herein is provided under the Policy; (ii) that Plaintiff's loss at the Insured Premises are not excluded from

---

[10] This has no bearing on the potential applicability (or non-applicability) of waiver in the context of any future argument about whether Defendants may disclaim coverage for reasons not included in the denial letter.

coverage; and, (iii) that Allstate's actions during the claim investigation were unlawful." Am. Compl. at 6. Defendants argue that the cause of action for declaratory judgment should be dismissed because it is not an independent cause of action. Defs.' SJ Mem. at 24. Plaintiff does not respond to this argument or make any substantive argument in support of this cause of action.

"Even in diversity actions . . . federal law controls the justiciability of declaratory judgment actions." Rosen v. Mega Bloks Inc., No. 06-CV-3474, 2009 WL 929474, at *2 (S.D.N.Y. Apr. 7, 2009), report and recommendation adopted, No. 06-CV-3474, 2009 WL 1392538 (S.D.N.Y. May 19, 2009). Under federal law, "a declaratory judgment relies on a valid legal predicate. The [Declaratory Judgment Act] is procedural only . . . and does not create an independent cause of action." Chevron Corp. v. Naranjo, 667 F.3d 232, 244 (2d Cir. 2012) (internal quotations omitted); see also Bartlett v. Overslaugh, 169 F. Supp. 3d 99, 110 (D.D.C. 2016) ("[A] count for a declaratory judgment is not cognizable as a separate cause of action") (internal quotation omitted). Thus, Defendants' Summary Judgment Motion is granted at to Plaintiff's independent—and undefended—cause of action for declaratory judgment.

### E. Affirmative Defenses

In their answer to the Amended Complaint, Defendants raise eight affirmative defenses. Dkt. No. 21 ("Answer to Amended Complaint") ¶¶ 49–56. Plaintiff makes a very brief argument that Defendants' first through fifth affirmative defenses should be dismissed. Pl.'s SJ Mem. at 21.

"Where a plaintiff uses a summary judgment motion . . . to challenge the legal sufficiency of an affirmative defense—on which the defendant bears the burden of proof at trial—a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support [an essential element of] the [non-moving party's] case." F.D.I.C. v. Giammettei, 34 F.3d 51, 54

(2d Cir. 1994) (internal quotations omitted). "While whatever evidence there is to support an

essential element of an affirmative defense will be construed in a light most favorable to the non-

moving defendant, there is no express or implied requirement in Rule 56 that the moving party

support its motion with affidavits or other similar materials negating the opponent's claim."

Id. (internal quotations and citations omitted).

Plaintiff claims that Defendants' first and second affirmative defenses—assumption of

risk and contributory conduct by Plaintiff—have "no application to an insurance claim." Id.;

Answer to Am. Compl. ¶¶ 59–60. Defendants make no attempt to explain the relevance, and the

Court sees none. Thus, Defendants' first and second affirmative defenses are dismissed.

Plaintiff asserts that Defendants' third affirmative defense—failure to mitigate

damages—has no basis in the record. Pl.'s SJ Mem. at 21; Answer to Am. Compl. ¶¶ 61.

Defendants contest this, arguing that the record reveals that Plaintiff made no effort to salvage "a

substantial amount of apparently undamaged furniture and other personal effects." Defs.' Opp. to

Pl.'s SJ at 18. Plaintiff does not rebut this evidence, and thus the court declines to dismiss

Defendants' third affirmative defense.

Plaintiff claims that the fourth affirmative defense—that defendants acted reasonably, in

good faith, and without malice—is "no defense to plaintiff's breach of contract or declaratory

judgment causes of action." Pl.'s SJ Mem. at 21; Answer to Am. Compl. ¶ 62. However, in

ruling on Plaintiff's motion to amend his complaint, the Honorable Andrew T. Baxter, U.S.

Magistrate Judge, held that "plaintiff's motion to amend by adding a fifth cause of action for the

violation of the implied covenant of good faith and fair dealing is denied, because it is

duplicative of his already asserted breach of contract claim." Dkt. No. 17 ("February 2018

Decision and Order") at 7. Thus, the Court declines to dismiss the fourth affirmative defense

because, as Defendants argue, that dismissal "would be inequitable . . . because that defense is an express response to the allegations made in the Complaint." Defs.' Opp. at 19.

Plaintiff makes no direct argument that Defendants' sixth and seventh affirmative defenses—that "Plaintiff failed to fulfill the terms, conditions and prerequisites of the insurance contract" and that "[t]he damages sought were not covered by the insurance contract"—should be dismissed. Answer to Am. Compl. ¶¶ 54–55; Defs.' Opp. to Pl.'s SJ at 19. These defenses relate to outstanding issues unresolved on summary judgment, and thus the Court declines to dismiss Defendants' sixth and seventh affirmative defenses.

Plaintiff also does not address Defendants' fifth or eighth affirmative defenses—that "Plaintiff failed to provide timely notice" and that the "loss, the act, and the damages fall within several exclusions of the policy and the bases of the denial were placed in a letter to the insured on June 20, 2017 . . . ." Am. Compl. ¶¶ 65–66.[11] Because Plaintiff does not address the fifth or eighth affirmative defenses, the Court declines to dismiss them. In any event, the fifth and eighth affirmative defenses, like the sixth and seventh, pertain to matters still in dispute.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Summary Judgment Motion is **GRANTED** as to Plaintiff's second cause of action (waiver and estoppel) and third cause of action (declaratory judgment); and it is further

**ORDERED**, that Defendants' Summary Judgment Motion is **DENIED** as to Plaintiff's first cause of action (breach of contract); and it is further

---

[11] It appears one of the eight affirmative defenses may have gotten lost in the shuffle, as Plaintiff refers to Defendants' "seven affirmative defenses." Pl.'s SJ Mem. at 21.

**ORDERED**, that Plaintiff's Summary Judgment Motion is **GRANTED** as to Defendants' first and second affirmative defenses; and it is further

**ORDERED**, that Plaintiff's Summary Judgment Motion is **DENIED** as to Defendants' third through eighth affirmative defenses; and it is further

**ORDERED**, that Plaintiff's Summary Judgment Motion is **GRANTED** as to the issue of the enforceability of the residency requirement as it pertains to Plaintiff's cause of action for breach of contract. At trial, Defendants may not argue that they validly disclaimed coverage because Plaintiff violated the residency requirement; and it is further

**ORDERED**, that Plaintiff's Summary Judgment Motion is in all other respects **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

DATED:       September 30, 2019
                   Albany, New York

Lawrence E. Kahn
U.S. District Judge